Charles P. Maher, State Bar No. 124748
DENTONS US LLP
One Market Plaza
Spear Tower, 24th Floor
San Francisco, California 94105
Telephone No.: 415-267-4000
Fax No.: 415-267-4198
E-mail: charles.maher@dentons.com

Counsel for Marlene G. Weinstein
Trustee in Bankruptcy

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>FARAJOLLAH JENNATI ATAIE aka ROGER ATAIE aka BIBI BAZAAR and FARZANEH P. ATAIE aka FARZI ATAIE,<br><br>Debtors. | Case No. 16-41815 RLE<br>Chapter 7<br><br>Date: To be Set<br>Time:<br>Place: 1300 Clay Street, Courtroom 201<br>Oakland<br>Court: Hon. Roger L. Efremsky |

**OPPOSITION OF TRUSTEE TO MOTION TO CONVERT CASE**

Marlene G. Weinstein, Chapter 7 Trustee of the estate of the above Debtors, files this opposition to the motion of the Debtors for an order converting their case to Chapter 13.

I. INTRODUCTION

The Trustee contends that the Debtors are not qualified to be the fiduciaries of this bankruptcy estate based on their failure to disclose assets, their failure to cooperate with the Trustee, their interference with the Trustee's attempt to liquidate real property under 11 U.S.C. §704(a)(1), the lack of sufficient income with which to fund a plan, and the availability of sufficient assets now to pay all creditors in full or a very substantial dividend.

II. STATEMENT OF FACTS

The Debtors filed a voluntary Chapter 7 petition on June 29, 2016. In their Schedule A, they disclosed ownership of the real property commonly known as 3226 Ensenada Drive, San

1

101560560\V-1

Ramon, California (the "Property"), and miscellaneous personal property. Authentic copies of the Schedule A and Schedule B are attached collectively as Exhibit A to the Declaration of Marlene G. Weinstein.

The Debtors attributed a value of $870,000 to the Property, disclosed debt secured by the Property in the amount of $435,000, and asserted a $175,000 exemption in the Property based on age (i.e., over 65). In response to personal property asset category number 32 in their Schedule B, the Debtors represented under penalty of perjury that neither was entitled to receive any inheritance, bequest, or devise. At the initial meeting of creditors under Section 341 of the Bankruptcy Code held on August 2, 2016, the Debtors affirmed that neither was entitled to any inheritance or distribution because of the death of any person.

In their Schedule F, the Debtors disclosed $244,000 in general unsecured debt. Weinstein Declaration, Exhibit B.

On August 18, 2016, the Trustee filed an application for an order authorizing her to employ real estate brokers to market and sell the Property. The Court entered an order authorizing the employment on August 19, 2016.

On August 22, 2016, counsel for the Debtors contacted the Trustee to inform her that Debtor Farzaneh Ataie was entitled to money from her family in Iran resulting from the death of her mother and that there would be an amount sufficient to pay in full all claims the Debtors expected to be filed (which they estimated to be roughly $125,000). These representations were contrary to the Debtors' Schedule B and their testimony on August 2, 2016.

Counsel for the Debtors requested that the Trustee not list the Property for sale to allow them to retrieve money from Iran which is where Mrs. Ataie's mother had lived. The Trustee indicated that, subject to Court approval, she would consider deferring marketing the Property for sale but needed assurance in the form of an accommodation from the Debtors that, if they failed to produce sufficient money to pay all claims in full, the Property could be sold and sufficient value would be realized for payment of claims and expenses. The Trustee suggested that the Debtors waive or subordinate their homestead exemption in exchange for the Trustee postponing administration of the bankruptcy estate and holding the Property off the market for a period of six

101560560\V-1

months. Counsel for the Trustee forwarded a stipulation to counsel for the Debtors and was prepared to serve notice of the agreement on creditors. The Debtors declined to agree to waive or subordinate their homestead exemption.

The Trustee conferred with Debtors' counsel and asked the Debtors to provide more information about the inheritance. Counsel sent an e-mail to the Trustee explaining the circumstances of the inheritance. An authentic copy of counsel's September 6, 2016, e-mail to the Trustee is attached to the Weinstein Declaration as Exhibit C. In that e-mail, counsel explained that the Debtor's mother had died "a couple of years" before and had left a sizeable estate. The Debtors' counsel did not explain why the expectation was not disclosed in their Schedule B or why its existence had been withheld from the Trustee at the August 2, 2016, Section 341 meeting.

The Trustee suggested that, in lieu of waiving or subordinating the entire exemption, the Debtors agree to reduce it to $100,000 in the event a sale became necessary. The Debtors declined to make this accommodation either. However, the Trustee was willing to consider the other options that might be available.

The Trustee asked the Debtors to appear at a second session of the Section 341 meeting to give them the opportunity to testify about the nature and amount of the expectancy and the certainty of receipt of sufficient funds to pay claims in full. When the Debtors appeared for the second session of their Section 341 meeting on September 13, 2016, they changed their story about the expectancy. Mrs. Ataie testified that the gold and other precious metals her counsel had described had a realizable value of $20,000 at most. Mrs. Ataie would not place a value on two apartments in Iran and implied that they had little value. She testified that the estate of her grandfather (from which some of the "available" money would come) was much smaller than previously represented and that the only asset remaining was an interest in real estate might have a value of $2,000 at most for her. She stated that the Debtors would have to borrow money for payment of claims.

The reluctance of the Debtors to make any accommodation regarding their homestead exemption created doubt about whether there actually were sufficient funds available from another source with which to pay creditors in full and whether the Debtors were sincere about paying

101560560\V-1

creditors or merely wanted to prevent the Trustee from selling the Property. The Trustee's skepticism about the Debtors' sincerity became more acute after their testimony at the second session of the Section 341 meeting. The Trustee believed that, if the Debtors were sincere, and confident that they could produce enough money for payment in full of all claims and expenses, they readily would have reduced their homestead exemption because doing so would obviate the need to sell the Property.

The Trustee concluded that there was no justification for deferring sale of the Property and she instructed her brokers to proceed with marketing the Property for sale. When the broker, Doreen Roberts, contacted the Debtors to request access, access was refused. The Trustee filed an application for an order under Section 521 compelling the Debtors to cooperate with the Trustee and surrender documents. Weinstein Declaration, Exhibits D, E, and F. The Court entered an order on September 19, 2016, approving the application in its entirety. Weinstein Declaration, Exhibit F. The response of the Debtors to the Trustee's application was to file their motion to convert the case to Chapter 13.

In their declaration filed in support of the motion to convert the case, the Debtors assert that they "listed all of our known assets in our possession and to which we believed we were entitled to own" that "Farzaneh Ataie's mother died in the Republic of Iran [in December 2015]," leaving "a sizeable estate consisting of gold coins, two apartments, a partial interest in undeveloped farmland, cash, and antiques." They further state that they believe that "each apartment has a fair market value of approximately $250,000." These representations contradict their testimony on September 13, 2016.

III. ARGUMENT

The Trustee contends that the Court may deny the motion on grounds of bad faith. She also contends that, if the Court were to grant the Debtors' motion, the Debtors could not fund or consummate a plan and the interests of creditors would not be served by conversion when an asset is available for liquidation now and will provide for a substantial dividend.

The joint declaration of the Debtors is ambiguous. If Mrs. Ataie is entitled to an inheritance from her mother, whether conditional or not, she should have disclosed it in the

Schedule B filed on June 29, 2016, and she should not have testified in response to a direct question from the Trustee on August 2, 2016, that neither she nor her husband was entitled to any inheritance or to participate in any distribution of assets from an estate.

Only when the Trustee focused on the only disclosed asset with significant value for the estate did the Debtors reveal the inheritance and represent that there was money to be had from another source that could satisfy their creditors in full. The Debtors represented through counsel on August 22, 2016, and September 6, 2016, that their interests in the real and personal property in Iran had significant value, more than enough to pay all claims and expenses. Then, on September 13, 2016, Mrs. Ataie testified that there was insignificant value in those interests. In their September 19, 2016, declaration, they reversed themselves again, claiming once again that there is significant value in those interests but equivocating about whether Mrs. Ataie was actually entitled to those interests or must borrow money from her sister.

The Debtors do not state directly that they intend to use money from Iran to pay their debts. They do not disclose their current income. They do not demonstrate that they can fund a plan. They certainly do not show that they are qualified to be fiduciaries, having concealed an expectancy, then disclosed it and attributed great value to it, only to discount the value considerably, and then inflate again when convenient for support of the motion to convert. Previously the Trustee was willing to make an unusual accommodation of the Debtors to defer marketing the property for sale provided that the Debtors give the estate their own accommodation by either waiving or reducing their homestead exemption so that, if after a 6-month deferral no money from another source could be used to pay debts, the Property could be sold and the estate will have been protected from any decline in value. She withdrew her proposal based on the September 13, 2016, Section 341 meeting testimony. The Debtors have asserted that, of the approximately $244,000 in unsecured debt they disclosed, approximately half would not result in the filing of claims, leaving potential general unsecured debt at roughly $125,000. If they are correct, there appears to be sufficient value in the Property for payment in full of all creditor claims and administrative expenses. The waiver or subordination in the homestead exemption should have been of no concern to the Debtors because, if sufficient money was available from

101560560\V-1

1  another source, the Property would never be sold and the amount of the homestead exemption
2  would never be an issue. The Debtors' reluctance to make any accommodation for the estate was
3  a sign to the Trustee that the Debtors' goal was to prevent the Trustee from selling the Property
4  whether or not any money was available for payment of claims from another source.

5  In their declaration, the Debtors claim that the Property is not worth the $870,000 they
6  disclosed in their Schedule A and actually has a much lower value due to alleged physical
7  problems.

8  The Trustee informed the Debtors at the second session of the Section 341 meeting on
9  September 13, 2016, that she intended to list the Property for sale and that her broker would be
10 contacting the Debtors. When the broker did contact the Debtors, Mrs. Ataie refused to set up any
11 time for an inspection and refused all access to the Property. This refusal required the Trustee to
12 request an order of the Bankruptcy Court compelling the Debtors to comply with their statutory
13 duty to cooperate with the Trustee and provide her and her brokers access to the Property for
14 inspections and for showings. Counsel for the Debtors was served with the order. The Debtors
15 have indicated that they will cooperate by providing access. However, the undersigned became
16 aware on the date of this memorandum that the Debtors are once again refusing access and are
17 demanding removal of the "For Sale" sign and lockbox.

18 A Debtor's right to convert a Chapter 7 case to another chapter is not absolute. *In re*
19 *Marrama*, 549 U.S. 365, 127 S.Ct. 1105 (2007). The right to voluntarily dismiss a Chapter 13
20 case under Section 1307 is not absolute, but is qualified by an implied exception for bad-faith
21 conduct or abuse of the bankruptcy process. *In re Rosson*, 545 F. 3d 764, 767 (9th Cir. 2008). The
22 same implied exception for bad faith conduct or abuse of the bankruptcy process should apply in
23 an attempted conversion to Chapter 13 by a debtor who has acted in bad faith or has abused the
24 bankruptcy process.

25 The right of a debtor to convert a Chapter 7 case to another chapter can be curtailed in the
26 case of a fraudulent or bad faith debtor in order to "prevent an abuse of process." 549 U.S. at 375.
27 "The principal purpose of the Bankruptcy Code is to grant a fresh start to the honest but
28 unfortunate debtor." 549 U.S. at 367.

> In practical effect, a ruling that an individual's Chapter 13 case should be dismissed or converted to a Chapter 7 because of prepetition bad-faith conduct, including fraudulent acts committed in an earlier Chapter 7 proceeding, is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13. That individual, in other words, is not a member of the class of "honest but unfortunate debtor[s]" that the bankruptcy laws were enacted to protect. [citation omitted] The text of § 706(d) therefore provides adequate authority for the denial of [the debtor's] motion to convert [to a Chapter 13].

549 U.S. at 373-74.

The Debtors have obligations under 11 U.S.C. § 521(a)(3) and (4) that are absolute. A debtor does not have the option to decline to cooperate with the trustee or decline to turn over property of the estate and documents to the trustee. The Debtors' failure to comply with their statutory duty to cooperate required the Trustee to obtain an order compelling them to comply with that duty. The Court approved the application and issued an order. The Trustee does not believe that debtors who have abused the bankruptcy system and failed to comply with statutory obligations can be fit fiduciaries.

If the Court converts the case to Chapter 13, the Debtors will be required to demonstrate the value of property to be distributed under their plan "is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7." They must also demonstrate that they will "be able to make all payments under the plan and to comply with the plan." 11 U.S.C. §1325(a)(4) and (6).

The Debtors' Schedule I and Schedule J show a loss every month. Money to fund a plan would have to come from another source.

The Debtors state that Mrs. Ataie's sister in Iran "has verbally agreed to turn over a portion of the liquid estate [of the mother] and one of the apartments so that it can be sold," but there is no commitment in writing from the sister, no evidence to show that there will be sufficient funds to pay all administrative expenses and claims in full or that creditors will receive what they would receive if the case is not converted and the Trustee sells the Property. The Debtors' credibility has been severely compromised by the inconsistency of their statements under oath and not under oath.

///

1    The Trustee contends that the Debtors have not made an adequate showing that conversion
2    of the case is in the best interest of creditors.
3    IV.    CONCLUSION
4    The Trustee asserts that the motion to convert is not brought in good faith and that it is
5    merely an attempt to prevent the Trustee from liquidating an asset that is readily available for
6    payment of creditor claims in substantial amount or perhaps in full. The Trustee does not see any
7    justification for believing the Debtors' promises that money will be available from some other
8    source, particularly when the expectation was omitted from the original schedules, given a great
9    value six weeks later, a lower value three weeks after that, and now a high value. The Debtors'
10   declaration is simply not credible. Creditors should not have to wait out an uncertainty while the
11   Debtors continue occupying an asset that could be liquidated.

DATED: September 28, 2016        DENTONS US LLP

                                 By: /s/ Charles P. Maher
                                 Charles P. Maher
                                 Counsel for Marlene G. Weinstein, Trustee

101560560\V-1